ANTONIO J. TAMBONE *vs.* BOARD OF APPEAL OF STONEHAM.

Middlesex.     November 5, 1964. — January 14, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Zoning,* Setback, Special permit.  *Administrative Matter.  Equity Pleading and Practice,* Zoning appeal.  *Words,* "Yard."

In the absence of any indication to the contrary in a town's zoning by-law, a distance specified for "Side Yards" in "Minimum yard requirements" referred to a setback distance for a building to be measured from a side line of a lot rather than from a zoning boundary line crossing the lot.  [360, 363–364]

In a suit in equity under G. L. c. 40A, § 21, by a landowner by way of appeal from a decision by a town's zoning board of appeals denying

Tambone *v.* Board of Appeal of Stoneham.

an application by the landowner for a special permit allowing certain use of his property for parking in connection with an apartment building thereon, where it appeared that the denial of the application was on the ground, erroneous under a correct interpretation of the zoning by-law, that the location of the building violated a setback requirement of the by-law, and it did not appear what action the board would have taken in the exercise of its judgment respecting such parking use in the light of the correct interpretation of the by-law, a decree annulling the board's decision and directing the board to grant the permit was reversed and it was ordered that a decree enter annulling the decision and remanding the matter to the board for such action.   [364–365]

BILL IN EQUITY filed in the Superior Court on September 10, 1963.

The suit was heard by *Chmielinski,* J.

*Frank M. Geremonte,* Town Counsel, for the defendant.

*Edward U. Lee* for the plaintiff.

SPIEGEL, J.   This is an appeal from a decree of the Superior Court annulling a decision of the board of appeal (board) and ordering it to grant the plaintiff's request for an exception pursuant to the zoning by-law of the town of Stoneham (town).

A zoning boundary line bisects the plaintiff's lot fifty feet from its easterly boundary so that the westerly part of the lot is in a Residence B district and the easterly part is in a Residence A district.   Article I, § 3, 2, of the zoning by-law of the town permits the construction of apartment houses in Residence B districts, but no such construction is permitted in Residence A districts.   Art. I, § 2.   On March 5, 1962, the plaintiff applied to the inspector of buildings for a permit to build an apartment house on the lot.   A site plan, submitted with the application, indicated that the easterly side of the building would be sixty-two feet from the easterly boundary of the lot and twelve feet from the zoning boundary line.   In March, 1962, the town adopted an amendment to the zoning by-law concerning the construction of apartment houses.   It provides that "All apartment buildings constructed in the Town shall meet the following requirements: . . . Minimum yard requirements: 1.  Front yard — 30 ft.  2.  Side yards — 30 ft.  3.  Rear yards — 30 ft. . . ."   Art. I, § 20.

Tambone *v.* Board of Appeal of Stoneham.

On May 29, 1962, the board of selectmen of the town held a hearing on the plaintiff's site plan, and, on May 31, 1962, approved it "subject to the requirements of the Planning Board." On June 20, 1962, the planning board approved the plaintiff's subdivision plan. On July 12, 1962, the plaintiff received a building permit and shortly thereafter began construction. On May 28, 1963, the plaintiff petitioned the board to "grant an exception in accordance with Article II, § 6, paragraph 2." The petition stated that the exception was sought "To permit the extension of a building or use, to wit: An apartment house with parking facilities to be used in connection therewith in a Residence A District east of and adjacent to a Residence B District, but not more than 50 feet beyond the boundary line of said Residence B District, in which district such building, to wit: an apartment house and parking facilities to be used therewith is authorized." On June 20, 1963, the board conducted a hearing on this petition. Through no fault of the plaintiff, the site plan could not be located. After viewing the lot, the board denied the petition for the following reasons: "Under Article II, Section 6, paragraph 2 of the Zoning By-Laws of the Town of Stoneham, the Board of Appeals has the authority to permit the extension of a building or use into a more restricted district if in its judgment the public welfare will be substantially served. The structure involved in this appeal, an apartment house, in fact already has been partially constructed and violates the Zoning By-Law of the Town of Stoneham, having only 12 feet setback from the East boundary of the Residence 'B' District rather than the required 30 feet. After repeated requests to the . . . [plaintiff] the inability of the Board . . . to obtain the site plan approved and signed by the Board of Selectmen as required in Article I, Section 18 of the Zoning By-Law, a document pertinent to this appeal, makes it impossible for the Board to determine the originally approved location and dimensions of the structure. Therefore, the Board of Appeals feels the public welfare will be best served and the existing Zoning By-Law sustained by denying this appeal."

Tambone v. Board of Appeal of Stoneham.

Annulling the decision of the board, the trial judge ruled that "the side yard requirements refer to distances the building shall be set back from the lot lines" rather than the zoning boundary lines. He found that the exception would substantially serve the public welfare of the town and that the appropriate use of the neighborhood property would in no way be injured. He also found that granting the exception would be in harmony with the purpose and intent of the zoning by-law, and concluded that the board, "in basing [its] . . . denial on the failure of the site plan to be produced and the violation of a side yard requirement, acted arbitrarily and unreasonably."

Under G. L. c. 40A, § 4, as appearing in St. 1954, c. 368, § 2, "A zoning . . . by-law may provide that exceptions may be allowed to the regulations and restrictions contained therein, which shall be applicable to all of the districts of a particular class and of a character set forth in such . . . by-law. Such exceptions shall be in harmony with the general purpose and intent of the . . . by-law and may be subject to general or specific rules therein contained. The board of appeals . . . of such . . . town . . . may, in appropriate cases and subject to appropriate conditions and safeguards, grant to an applicant a special permit to make use of his land or to erect and maintain buildings or other structures thereon in accordance with such an exception. . . ." Article II, § 6, of the zoning by-law of the town provides that when in the judgment of the board "the public welfare will be substantially served or the appropriate use of neighborhood property will not be substantially injured, the Board of Appeal may . . . subject to appropriate safeguards determine and vary district regulations in harmony with their general purpose and intent as follows: . . . 2. Permit the extension of a building or use into a more restricted district immediately adjacent thereto but not more than fifty (50) feet beyond the boundary line of the district in which such building or use is authorized."

The decision of the board to deny the plaintiff's request for an exception could be annulled by the Superior Court

under G. L. c. 40A, § 21, as amended through St. 1960, c. 365, if the decision is "found to exceed the authority of such board." We note that the only reasons given for the denial of the requested exception were (1) that the plaintiff's apartment house "in fact already has been partially constructed and violates the Zoning By-Law of the Town . . . , having only 12 feet setback from the East boundary of the Residence 'B' District rather than the required 30 feet," and (2) that "[a]fter repeated requests to the . . . [plaintiff] the inability of the Board . . . to obtain the site plan . . . makes it impossible for the Board to determine the originally approved location and dimensions of the structure." Neither of these reasons is valid. These reasons are not responsive to the criteria set forth in the by-law. Nor have they any intrinsic merit.

The first reason assumes that art. I, § 20, in setting forth the "minimum yard requirements" of apartment buildings, refers to the distance of such buildings from zoning boundary lines rather than lot lines, at least where those boundary lines are closer to the buildings than the lot lines. In this connection, the board contends that the thirty foot side yard requirement of the by-law should be measured from the zoning boundary and not from the lot line which lies beyond it fifty feet to the east. However, such a position requires a novel construction of the word "yard" as it is used in the by-law. Since the word is nowhere defined therein, we assume that it carries its ordinary meaning in this context, viz., "[a] piece of land inclosed for the use and accommodation of the inhabitants of a house," or "[a]n enclosure, with or without buildings, devoted to some work or business." Black's Law Dictionary (4th ed.) p. 1790. It also denotes "the grounds immediately surrounding a house . . .." Webster's New Intl. Dictionary (3d ed.) p. 2647. These definitions are consistent with the construction given to art. I, § 20, by the trial judge, "[t]hat the side yard requirements refer to distances the building shall be set back from the lot lines."

Furthermore, we note that, in general, setback requirements in the by-law refer to distances from street lines, lot

lines, or existing structures, rather than from zoning boundaries. See art. I, § 2a; art. I, § 2c; art. I, § 3c. Where such requirements refer to distances from zoning boundaries, the applicable provision so states explicitly. See art. I, § 7A.[1] In the same manner, the town could have provided that no apartment building shall be constructed within thirty feet of a residence district; but it has not done so, and we see nothing in the existing by-law to warrant such an interpretation of the "minimum yard requirements."

In addition, art. II, § 6, 2, of the by-law provides that the board may grant an exception to permit limited extensions of "a building or use" into an adjacent, more restricted district. If the yard requirements are here deemed to necessitate measurement from the zoning boundary line instead of the lot side line, such an exception could never be granted with regard to an apartment building because granting the exception would permit an extension beyond a setback line. Such an extension would constitute "a variance from the . . . [by-law], and must be sought under the variance procedure, G. L. c. 40A, § 15, and not by way of a special permit under an exception." *Wrona v. Board of Appeals of Pittsfield*, 338 Mass. 87, 89–90.

We agree with the ruling of the trial judge that "the side yard requirements refer to distances the building shall be set back from the lot lines," rather than from the zoning boundary line.

Regarding the board's second reason for refusing to grant the plaintiff's exception, the trial judge correctly ruled that "the inability of the Board of Selectmen to find the site plan" is not "properly chargeable to the plaintiff."

The only determination of the board has been to deny the application for an exception because of a misconception of the requirements of the by-law. The record does not show that except for the misconception the board would have granted the application for an extension of the parking use into the adjacent, more restricted district. Cf. *Pendergast*

---

[1] "No driveway to such premises [service stations, etc.] shall be in any part within fifty feet of any Residence District."

v. *Board of Appeals of Barnstable,* 331 Mass. 555; *Chater* v. *Board of Appeals of Milton, ante,* 237, and cases cited. However it appears likely from the board's brief that there exists a strong basis for a determination that the requested exception will substantially serve the public welfare or not substantially injure neighboring property, as the by-law requires. The board's brief concedes that the extension of the parking area "could have been allowed . . . if only parking was concerned," and that the board "had granted such an appeal to the plaintiff on a prior occasion for the adjacent property." Assuming this to be so, and if the present situation is similar, and there are no countervailing considerations, a denial of the exception might be arbitrary and hence invalid. *Mahoney* v. *Board of Appeals of Winchester,* 344 Mass. 598, 602.

It is the opinion of this writer that the present record supports the action of the trial judge in annulling the decision of the board and ordering it to grant the plaintiff's application for an exception pursuant to the by-law.

The majority are of opinion, however, that since on this record the board has not exercised its judgment on the issue presented by the application, the case must be remanded to the board for action on the application consistent with this opinion. The decree is reversed, and a decree is to be entered annulling the decision of the board as in excess of its authority and remanding the case for action by the board as aforesaid.

*So ordered.*