223 N.J. Super. 199 (1988)
538 A.2d 427
HERMOGENES CIOCON AND CELIA CIOCON, PLAINTIFFS-RESPONDENTS,
v.
THE PLANNING BOARD OF THE BOROUGH OF FRANKLIN LAKES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 22, 1987.
Decided March 1, 1988.
*200 Before Judges DEIGHAN and R.S. COHEN.
John A. Spizziri, Sr., P.C., attorney for appellant (Michael I. Lubin on the brief).
Orbe, Nugent, Collins & Darcy, attorneys for respondents (Thomas F. Cermack, Jr. on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
On this appeal, we are required to determine whether a rear-yard set-back requirement in a zoning ordinance concerning *201 a lot located in two municipalities refers to the distance between the residence and the rear-yard lot line located in an adjoining municipality or the distance between the residence and the municipal boundary. We hold that under the facts and circumstances in this matter, the rear-yard set-back is to be measured from the rear-yard lot line rather than the municipal boundary line which transects the rear of the lot.
Defendant, the Planning Board of the Borough of Franklin Lakes (Board), appeals from an order entered on January 26, 1987, by the Superior Court, Law Division, Bergen County, reversing its denial of an application for a variance by the plaintiffs, Hermogenes Ciocon and Celia Ciocon, from the rear-yard set-back requirements of the Franklin Lakes Zoning Ordinance (Zoning Ordinance).
After a hearing de novo on the record, Judge Hamer reversed the Board's decision essentially on the basis, as hereinbefore noted, that the Board's denial of a variance was arbitrary, capricious and unreasonable and alternatively that a variance was not required.
The essential facts are not in dispute. Plaintiffs are the owners of a tract of land consisting of approximately 3.7118 acres known as 912 Cherokee Lane in Franklin Lakes. A small triangular plot to the rear of the property consisting of 0.469 acres known as Lot 12, Block 604 is in Wayne Township while 3.2428 acres of the property is in Franklin Lakes. The property is divided by the municipal boundary between the Borough of Franklin Lakes and the Township of Wayne and also the boundary line between Bergen County and Passaic County.
Both parcels were at one time part of two larger contiguous tracts of land owned by Urban Farms, Inc., plaintiffs' predecessor in title. In 1984, Wayne approved a subdivision of the property. Lot 12, Block 604 in Wayne was subdivided from a large tract owned by Urban Farms in Wayne to join it with the parcel in Franklin Lakes. The resolution by the Wayne Township Planning Board, granting the subdivision imposed three *202 conditions: (1) the subdivided tract be added to Lot 9, Block 2101M in Franklin Lakes; (2) a deed be recorded with a new perimeter description of the lot in Franklin Lakes incorporating the lot being annexed thereto, and (3) since the property was designated as park land on Wayne Township's Official Map Of Parks, a variance must be granted by the board of adjustment. A use variance was granted by the Wayne Township on July 1, 1985 to permit construction of recreational facilities on the portion of plaintiffs' property located in Wayne. Thereupon Urban Farms conveyed the properties in Wayne Township and Franklin Lakes to plaintiffs as a single tract of land with a metes and bounds perimeter description including both lots.
When plaintiffs applied for a soil-removal permit and filed a site plan for the construction of their home, the Board took the position that the rear line of the property was legally fixed by reference to the lot line of Lot 9, Block 2101M, shown on the Tax Map of Franklin Lakes as the boundary between Franklin Lakes and Wayne rather than the rear lot line in Wayne. The Board advised that it required a variance from the 25-foot rear-yard set-back provision of the Zoning Ordinance.
Plaintiffs then applied to the Board for a variance from the provisions of the Zoning Ordinance. The matter was presented at a Board meeting on February 5, 1986. George Paul James, a licensed professional engineer and planner, testified for plaintiffs. He noted that the house as proposed would not be less than 400 feet from the closest neighboring home. The Board members expressed concern that the overlap into the Wayne property resulted from the placement of the home 400 feet back from the front lot line. James testified that the location of the house was the result of the topography of the land which had a very steep grade; he stated that the proposed location of the home was the most feasible and desirable location. He testified that the grant of the variance would be of no substantial detriment to the public good and that there would be no impairment of the Zoning Ordinance in this particular design.
*203 The Board adopted a resolution rejecting plaintiffs' application for a variance essentially on the ground that the location of the pool and tennis court did not comply with the 25-foot rear-yard requirement of the Zoning Ordinance.
Plaintiffs then filed a complaint in lieu of prerogative writs in the Superior Court, Law Division to determine that (1) the rear yard requirements of the borough's zoning code were inapplicable to their property and, (2) the Board's denial of the variance was arbitrary, capricious and unreasonable.
After a hearing, the trial judge reversed the Board's decision ruling that no variance was required because the entire tract was one lot and the municipal boundary line may not be considered a lot line for purposes of rear-yard requirements. Alternatively, the trial judge also concluded that the Board's denial of the variance was arbitrary, capricious, and unreasonable. The fact that part of the property was located in another municipality along with the topographic and aesthetic conditions were special reasons sufficient to meet the criteria for a variance. Judge Hamer concluded that a variance would not harm the zoning scheme but would, in fact, foster and enhance those objectives. Accordingly, he entered an order granting plaintiffs' relief.
On this appeal, the Board contends that the trial court erred: (1) in ruling that no variance was necessary for the construction of plaintiffs' swimming pool and tennis court, and (2) in setting aside the Planning Board's denial of plaintiffs' variance application.
We affirm.
In support of its position that the municipal boundary line constitutes the lot line for the purposes of determining set-back provisions in its zoning ordinance, the Board relies on Town of Brookline v. Co-Ray Co., 326 Mass. 206, 93 N.E.2d 581 (1950) which involved a tract of land lying in two municipalities. *204 There the defendant owned a parcel of land of approximately 20,000 square feet separated by the municipal boundary line between Boston and its suburb, Brookline. Approximately 15,000 square feet were located in Boston and 5,000 square feet located in Brookline. The property in Brookline was zoned as a single-residence district. The defendant proposed to build a 28-family apartment house on the Boston property and to use the Brookline property as a rear-yard and service entrance for the apartment building to satisfy the requirements of the Boston Zoning Regulations. Brookline successfully sued to enjoin defendant from using the Brookline property as a rear-yard and service entrance for the apartment building.
Brookline is distinguishable from the present matter. In Brookline, the converse situation was present  it was Brookline (Wayne) which sought the injunction for the portion of the property located within its borders where the use of the property in Boston (Franklin Lakes) was a permitted use. Here, unlike Brookline, Wayne has granted a use variance. The defendant in Brookline was going to use the adjoining restrictively-zoned plot located in Brookline in violation of the use as a residential zone. Brookline successfully enjoined a prohibited use under its zoning ordinance. Here, Wayne has permitted plaintiffs the use of property for recreational purposes and to construct a pool and tennis courts. Here, it is Franklin Lakes which seeks to deny plaintiffs the right to use the more restrictively-zoned land in Wayne to satisfy its contention that the rear-yard set-back is determined by the municipal boundary line rather than the lot line.
In any event, subsequent to the decision in Brookline, the Supreme Judicial Court of Massachusetts, without expressly referring to, overruling or distinguishing Brookline, decided two cases involving a "split lot", that is a lot divided by a municipal or zoning boundary line, which support plaintiffs' position. See Lapenas v. Zoning Board of Adjustment of Brockton, 352 Mass. 530, 226 N.E.2d 361 (1967) and Tambone v. Bd. of Stoneham, 348 Mass. 359, 203 N.E.2d 802 (1965).
*205 In Lapenas, the Court held that that a variance to permit access over residentially-zoned land in Brockton to the remaining part of the lot located in the adjoining Town of Abington zoned for business was improperly denied. The boundary between Brockton and Abington ran through the lot placing part of the lot in Brockton in a residence zone and the remainder in Abington in a business zone. Id. 226 N.E.2d at 363.
In concluding that the parties were entitled to the variance, the court noted that "[i]n the circumstances, the plaintiffs are entitled to relief from the literal operation of the zoning ordinance." Id. at 364. The court held that the denial of the variances was "capricious and arbitrary." Ibid.
In Tambone v. Board of Stoneham, supra, the Court dealt with the issue of the use of land in a different and more restrictive zone to meet side-yard requirements of a less restrictively-zoned portion of the parcel. An apartment building was partially erected on a parcel of land bisected by the zone boundary line 50 feet from its easterly boundary. The westerly side of the lot was in a residence "B" district, where apartment houses were permitted, but the easterly 50 feet was partially located in a resident "A" district, where apartment houses were not permitted. The owner proposed to place his building 62 feet from the easterly boundary of the lot line which was 12 feet from the zone boundary line. The zoning bylaw required apartment buildings to have 30-foot side yards. The apartment owner petitioned the board of adjustment for a special exception to permit him to use the more restrictively-zoned portion of the lot in the "A" district to satisfy the side-yard requirements of the less restrictively-zoned portion of the property. The Board refused to grant the exception on the ground that the structure violated the zoning bylaw because it only had a 12-foot set back from the zone line even though it was 62 feet from the building lot line.
In reversing this determination and affirming the trial judge, the court held:

*206 We agree with the ruling of the trial judge that `the side-yard requirements referred to distances the building shall be set back from the lot lines,' rather than from the zoning boundary. [348 Mass. at 364, 203 N.E.2d at 805.]
See also Annotation, "Validity and Construction of Zoning Regulation Respecting Permissible Use as Affected by Division of Lot or Parcel by Zone Boundary Line," 58 A.L.R. 3rd 1288-1289 (1974).
In Tambone, the word "yard" was not defined in the ordinance. The court applied the ordinary meaning of the word as a piece of land enclosed for the use and accommodation of the inhabitants of the house or an enclosure with or without buildings devoted to some work or business, citing Black's Law Dictionary, (4th ed.) p. 1790. Id. at 804. The court also accepted the definition in Webster's New International Dictionary, 3 ed. at 2647 that a yard denotes "the grounds immediately surrounding a house." Id. This definition is strikingly similar to the definition of a rear yard under Section 128A-2 of the Franklin Township Zoning Ordinance:

Rear Yard  An unoccupied space within and extending the full width of the lot between the rear-lot line and that parcel of the building nearest thereto.
Section 128A-6E of the zoning ordinance sets forth the rear-yard requirement as it pertains to the subject property:

Rear Yard  Within any residence district the required rear yard shall be 25 feet.
Section 118A-5 of the Borough's Subdivision and Site Plan Review Ordinance also defines the word lot:

lot  A parcel or portion of land separated from other parcels or portions by description, as on a subdivision or record of survey map, or by metes and bounds, for the purpose of sale, lease or separate use.
Under the Municipal Land Use Law a "lot" means a designated parcel, tract or area of land established by a plat or otherwise, as permitted by law and to be used, developed or built upon as a unit although not defined in the zoning or subdivision ordinances. N.J.S.A. 40:55D-4.
Judge Hamer, in reversing the Board, essentially found that the evidence presented satisfied the flexible "c" criterion, N.J.S.A. 40:55D-70c(2) and the negative criteria. N.J.S.A. 40:55D-70. *207 In reaching this conclusion, he relied on the testimony of plaintiffs' professional witness, George Paul James, which, although conclusory in some places, made common sense.
The location of plaintiffs' home was necessitated by the topography of the property which also coincided with the most aesthetic location. The home will be set back 400 feet from the front property line where the elevation of the property is substantially greater than the front. As a matter of fact, the contour of the property from front to back is so steep as to require a long winding driveway. Plaintiffs were required to obtain an easement from the adjoining easterly property owner because the steepness of the property required the driveway to serpentine extensively across the steep hill. In view of the evidence as to the property's unique topography, it appears that it was impractical to locate the house closer to the front property line.
The trial judge further found that the location of the home satisfied the negative requirements. He noted that there would be no substantial detriment, that a deviation from the rear-yard requirement would advance the purpose of the ordinance and that the benefits or the deviation would substantially outweigh the detriment and that there would be no substantial impairment of the zoning scheme based on the above facts. The record supports these conclusions.
The area of the lots in this neighborhood is over three acres and the lots clearly are meant for the types of homes which would have the amenities of pools and tennis courts. There was testimony that neighboring homes had tennis courts, swimming pools or both on their property. The nearest dwelling to plaintiffs' home was 400 feet. Permitting plaintiffs to build a pool and tennis court enable them to maintain their property in the same character and vogue as their neighbors. See Home Builder's League of South Jersey, Inc. v. Twp. of Berlin, 81 N.J. 127, 145 (1979).
*208 The Board's denial of a variance ignores not only the testimony of plaintiffs' expert witness but also the topographical problem concerning plaintiffs' lot. As Judge Hamer noted, James' testimony that due to the steep grade of plaintiffs' property, it was most feasible to locate the residence at the top of the grade which also provided plaintiffs with the best aesthetic view of their property. Contrary to the Board's constant comments at the hearing before it, plaintiffs' desire for the most aesthetic location for their home may be a valid reason to grant a variance. N.J.S.A. 40:55D-62(a); Commons v. Westwood Zoning Board of Adjustment, 81 N.J. 597, 610 (1980).
We hold that under the facts and circumstances presented, where a boundary line transects a property located within two municipalities, the rear-yard set-back requirements of one municipality refer to the distance that the building is located from the rear-lot line located in the adjoining municipality rather than from the municipal boundary line.
In view of our determination, we deem it unnecessary to consider the issue as to whether a variance was even required.
Affirmed.