600 A.2d 180

DONALD M. KAPLAN PLAINTIFF, v. CITY OF LINWOOD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND PLANNING BOARD OF THE CITY OF LINWOOD, DEFENDANTS.

Superior Court of New Jersey
Law Division (Civil)
Atlantic County

Decided September 14, 1991.

*Jack Plackler* for plaintiff (*Horn, Kaplan, Goldberg, Gorny & Daniels,* attorneys) (*Nicholas F. Talvacchia* on the brief).

*Willis F. Flower* for defendant City of Linwood Planning Board (*Ford & Flower,* attorneys).

*Lawrence P. Engrissei* for defendant City of Linwood.

WINKELSTEIN, J.S.C.

Plaintiff, the owner of Lot 9.01, Block 182.01 on the City of Linwood tax map, appeals the decision of the City of Linwood Planning Board (the board) which denied plaintiff's application for a minor subdivison which would divide existing Lot 9.01 into two lots, proposed Lots 9.01 and 9.05. No variances were sought by plaintiff.

Existing Lot 9.01 lies in two different zones. It contains plaintiff's residence, which lies in dwelling A zone (the dwelling zone), which allows private single-family residences as a permitted use. It also lies in the conservation zone which prohibits the erection of buildings or structures and the use of the zone for anything other then municipal utilities.

This opinion is an elaboration of the court's oral opinion from the bench on September 14, 1991. There are two primary issues. First, the novel issue of whether the portion of plaintiff's lot which lies in the conservation zone may be used for calculation of bulk requirements, such as lot size and setback lines, without the necessity of a variance.

Second, assuming the bulk requirements are met, is the board automatically required to grant minor subdivision approval?

Proposed Lot 9.05 contains 73,616 square feet, measures approximately 279' × 253' and is irregular in shape. Approximately 8,500 square feet of Lot 9.05 are uplands and located in the dwelling zone, with the balance of the lot located in the conservation zone. The development plan is to sell the new lot for construction of a home.

The board concluded that measurements for lot size, setbacks and other bulk requirements must be calculated by using only the portion of the lot located within the dwelling zone. Plaintiff argues that measurements should have been made from lot (or property) line to lot (or property) line. Both parties agree that unless the entire lot is used for purposes of bulk-requirement calculations, the subdivision would fail to meet the mini-

mum lot area of 10,000 square feet and other setback requirements.

The zoning ordinance contains the following pertinent provisions:

§ 57–18.  Lot size, coverage and setbacks.

A.  A lot within the Dwelling A Zone shall have a width of at least one hundred (100) feet, a depth of at least one hundred (100) feet and frontage on a street of at least one hundred (100) feet, with a minimum of ten thousand (10,000) square feet.

. . . .

C.  Setbacks.

(1) The main building or any permitted detached accessory buildings shall be set back at least twenty (20) feet from the front property line.

. . . .

§ 57–14  Definitions.

**LOT**—A designated parcel, tract or area of land established by a plat or otherwise as permitted by law and to be used, developed or built upon as a unit.

**LOT DEPTH**—The mean distance between the front and rear lot lines, measured in the general direction of the sidelines of the lot.

**LOT LINE** or **PROPERTY LINE**—The boundary line dividing an owner's lot from another lot or from the contiguous public right-of-way.

**LOT WIDTH**—The distance between the side lot lines, measured along the building setback line, or if no setback line is established, the mean width of the lot, measured at right angles to its depth.

**REAR YARD**—Space between the rear building line and the rear property line.

**SETBACKS**—The distance between any property line and the intended use or structure. "Setbacks" are to be measured from property lines; with driveways and parking areas to be included within that area unless otherwise prohibited.

■  A planning board's decision has a presumption of reasonableness, is presumed to be valid, and may not be overturned unless it is arbitrary, capricious or unreasonable. *Kramer v. Sea Girt Bd. of Adjustment,* 45 *N.J.* 268, 212 *A.*2d 153 (1965); *Davis Enterp. v. Karpf,* 105 *N.J.* 476, 485, 523 *A.*2d 137 (1987). The court should not sit in judgment as to whether the board's decision was wise and substitute its own judgment for that of the board. *Kaufman v. Planning Bd. for Warren Tp.,* 110 *N.J.* 551, 542 *A.*2d 457 (1988).

In *Ciocon v. Franklin Lakes Plan. Bd.*, 223 *N.J.Super.* 199, 538 *A.*2d 427 (App.Div.1988), the court held that a rear-yard setback was to be measured from the rear lot line rather than the municipal boundary line which divided the lot. The planning board denied the application for a variance and the trial court reversed the decision, holding that the board's denial was arbitrary, capricious and unreasonable and, alternatively, that a variance was not required. The Appellate Division in *Ciocon* did not consider the issue of whether a variance was required, as it held that plaintiff had met the requirements for a variance.

The *Ciocon* court relied, in part, on *Tambone v. Bd. of Stoneham*, 348 *Mass.* 359, 203 *N.E.*2d 802 (Sup.J.Ct.1965), in which the facts were strikingly similar to the instant case.

In *Tambone v. Board of Stoneham, supra,* the court dealt with the issue of the use of land in a different and more restrictive zone to meet side-yard requirements of a less restrictively-zoned portion of the parcel. An apartment building was partially erected on a parcel of land bisected by the zone boundary line 50 feet from its easterly boundary. The westerly side of the lot was in a residence "B" district, where apartment houses were permitted, but the easterly 50 feet was partially located in a resident "A" district, where apartment houses were not permitted. The owner proposed to place his building 62 feet from the easterly boundary of the lot line which was 12 feet from the zone boundary line. The zoning bylaw required apartment buildings to have 30–foot side yards.... The board refused to grant the exception on the ground that the structure violated the zoning bylaw because it only had a 12–foot set back from the zone line even though it was 62 feet from the building lot line. *Ciocon,* 223 *N.J.Super.* at 205, 538 *A.*2d 427.

The Supreme Court in *Tambone* concluded that side-yard requirements referred to the distances the buildings should be set back from lot lines. The court held that, in general, "setback requirements ... refer to the distances from street lines, lot lines, or existing structures, rather then from zoning bounderies." 348 *Mass.* at 364, 203 *N.E.*2d 802.

In the instant case, an examination of § 57–18(A), in light of the definitions set forth in the ordinance, shows that the board's decision to limit the calculations to the land located only within the dwelling zone cannot be supported. To arrive

at such a conclusion would render the definitional sections of the ordinance meaningless. Both lot width and lot depth are defined as distances between lot lines. Setbacks are measured from property lines. Rear yard is measured to the rear property line. There is no language in the ordinance which would limit calculations to the area within a given zone. All references are to the area between lot or property lines. The board in making its determination made no attempt to reconcile the definitions with the language of § 57–18(A). Without engaging in such a process, the board's decision was arbitrary. Definitions are contained in an ordinance to provide guidance and consistency in ordinance interpretation. An ordinance should not be read in a manner which would render a portion thereof meaningless. Construction of a legislative enactment which would render any part thereof superfluous is disfavored. *Pepper v. Princeton Univ. Bd. of Trustees*, 77 *N.J.* 55, 389 *A.*2d 465 (1978).

Reading the ordinance to allow the area located within the conservation zone to be used for bulk requirements is consistent with the purposes for having bulk requirements, which include preservation of light, air, open space and density. The proposed new lot is over 73,000 square feet. The use of open space that is designated as wetlands, located in the conservation zone, furthers these goals. Although plaintiff could not build a structure on the portion of the property located in the conservation zone, there is no reason why the balance of the property located in that zone should not be used for other than construction purposes.

In *American Dredging Co. v. State*, 169 *N.J.Super.* 18, 20–21, 404 *A.*2d 42 (App.Div.1979), the court upheld a decision of the Department of Environmental Protection designating a portion of a parcel of property as wetlands, preventing the owner from filling the property with dredge spoils. The court limited the use of a portion of the property, holding that the regulations did not prevent all practical use of the property as a whole. The court added, however, that the wetlands portion

could serve a useful purpose. Although plaintiff's property was zoned as "riverfront industrial" and was subject to a limitation of development to 50% of its area, the court concluded that even if the wetlands portion could serve no other practical purpose, it could serve as the open-area segment of the remainder of plaintiff's property when it was developed for industrial use. *Id.* at 20–21, 404 *A.*2d 42.

This is not unlike the case at hand where the area located in the conservation zone, while not being used for placement of a structure, may be used to meet the bulk requirements.

For all of the above reasons, I find that the decision of the board not to include the portion of the lot located within the conservation zone to determine bulk requirements was arbitrary and unreasonable.

█ Since the use of the area located within the conservation zone would allow plaintiff to meet all of its bulk requirements, the remaining issue is whether the board is required to grant the approval. Plaintiff argues that, for purposes of a minor subdivision, once the bulk requirements have been met, a planning board has no option but to approve the application.

In *El Shaer v. Planning Bd.,* 249 *N.J.Super.* 323, 592 *A.*2d 565 (App.Div.1991), the court held that just because the bulk requirements were met did not mean that there was an automatic approval of the subdivision plan. In citing *Levin v. Livingston Tp.,* 35 *N.J.* 500, 510–511, 173 *A.*2d 391 (1961), the court reiterated the proposition that:

> It is of essential importance to determine whether the whole tract proposed to be subdivided is fundamentally suitable for the projected development from the standpoint of area, topography, drainage, soil characteristics, accessibility, availability for utilities and the like.... Special drainage and sanitary sewage disposal problems may require particular remedies to be undertaken.... In short, at inception the board has the very great responsibility of doing everything possible to avoid future problems of vital importance to the community and subsequent individual property owners. [249 *N.J.Super.* at 328, 592 *A.*2d 565]

The planning board functions discussed above apply to both major and minor subdivisions. In this case there may be

questions as to the suitability of the property for development in light of the wetlands adjacent to the buildable portions of plaintiff's lot. There may be possible drainage or topography issues. Such items are within the purview of a planning board to review. Although a minor subdivision allows for a less cumbersome and quicker resolution of applications than would occur with a major subdivision, to require a planning board to approve an application merely because the lot conforms to bulk requirements would remove a board's discretion, turning it into a rubber stamp. The power of the planning board exists to protect and secure what is good for the public welfare. *Hamlin v. Matarazzo*, 120 *N.J.Super.* 164, 172, 293 *A.*2d 450 (Law Div.1972). If a board is bound to grant an application merely because the lot conforms to bulk and size requirements, its powers become emasculated.

Based on the foregoing, the matter is remanded to the board to recalculate the bulk requirements using lot or property lines. Thereafter, the board shall consider the suitability of the development pursuant to the criteria set forth above.