788 A.2d 841 (2002)
346 N.J. Super. 569
John SARTOGA and Olga Sartoga and City of Clifton, Plaintiffs-Appellants,
v.
BOROUGH OF WEST PATERSON and Garret Pointe Associates, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 2001.
Decided January 18, 2002.
*842 John Sartoga, appellant, argued the cause pro se.
Elisa Leib, Clifton, argued the cause for appellant City of Clifton, (Gerald G. Friend, Municipal Attorney, attorney; Scott J. Bennion, First Assistant Municipal Attorney, on the brief).
N. Noelle Letcher argued the cause for respondent Borough of West Paterson, (Gerber & Samson, attorneys; Steven Gerber and Ms. Letcher, on the brief).
David R. Oberlander, Cherry Hill, argued the cause for respondent Garret Pointe Associates, (Flaster/Greenberg, attorneys; Carl S. Bisgaier and Mr. Oberlander, on the brief).
Before Judges SKILLMAN, WALLACE, Jr. and CARCHMAN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The City of Clifton and two of its residents appeal from a summary judgment which dismissed their complaints challenging *843 the validity of a Borough of West Paterson zoning ordinance that rezoned land immediately adjacent to Clifton to allow residential development at a density of twenty units per acre. We conclude that the factual materials submitted by plaintiffs presented contested material issues of fact, and therefore the trial court erred in granting summary judgment.
The rezoning challenged by plaintiffs was part of a Mount Laurel[1] compliance plan that West Paterson submitted to the Council on Affordable Housing (COAH). This plan included proposed construction of low and moderate housing on three sites, one of which was a six and a half acre tract in an abandoned rock quarry owned by defendant Garret Pointe Associates (Garret Pointe). The compliance plan and implementing ordinance provide for the construction of 130 residential units on this site, 20 of which would be affordable to lower income households. On October 6, 1999, COAH granted substantive certification approving West Paterson's compliance plan.
John and Olga Sartoga, who live on Paxton Street in Clifton, a narrow, dead-end street that would have to be extended and improved to allow access to the proposed residential development on the Garret Pointe site, and the City of Clifton, filed separate actions in lieu of prerogative writs against West Paterson challenging the validity of the amended zoning ordinance. The trial court consolidated the Sartoga and Clifton complaints and granted Garret Pointe's motion to intervene as a defendant.
After discovery, plaintiffs and defendants filed cross-motions for summary judgment. In support of their motion, plaintiffs relied upon a lengthy report by a planner, Stan Lacz, who characterized the site as environmentally sensitive due to steep grades with related storm water runoff problems and an abandoned quarry with a stone face that ranges from forty to seventy feet in height. Lacz also noted that the only access to the site is by a footpath from the end of Paxton Street, which is twenty-three foot wide roadway that currently provides access to three single family residences. In addition, Lacz indicated that there is no safe pedestrian access to the Garret Pointe site. According to Lacz, "[t]he ordinance does not secure safety because an excessive number of residential units are being placed on a dead-end street and the development ... is being placed adjacent to quarry walls, which is an attractive climbing hazard to children and adults even if the walls are retrofitted to prevent falling stones." Lacz also stated that "[t]he ordinance does not establish an appropriate population ... concentration [because it] ... will produce population density substantially different from that of the adjacent neighborhood as well as a degradation of the environment by placing such density on a steep slope situation." Lacz's report concluded that the rezoning of the Garret Pointe site for high density residential development is "contrary to the principles of good planning" as set forth in the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -136.
In addition to the Lacz report, plaintiffs relied upon a report by another planner, Charles S. DiMarco, which focused on the vehicular access problems that would be created if a high density residential development were constructed on the site. He pointed out that Paxton Street, which provides *844 the sole access to the site, empties into Mountain Park Road, a two lane county roadway. According to DiMarco, "[t]he existing topography, including steep side slopes, a narrow right-of-way and significant horizontal and vertical curves and grades along both Paxton Street and Mountain Park Road severely limit sight distance at the intersection of Paxton Street and Mountain Park Road." DiMarco concluded that "[i]mprovements to help alleviate the existing inadequate sight distance would involve a major reconstruction of the intersection including an increase in the horizontal curve radius and a decrease in the steep downward grade along eastbound Mountain Park Road," which would require the acquisition of private property at the intersection. DiMarco indicated that without such a major reconstruction, "[i]t is unlikely that any significant increase in traffic entering Mountain Park Road from Paxton Street could be safely handled." DiMarco also concluded that "Paxton Street is not conducive to widening due to the significant side slope grades along each curb," and that "an extension of Paxton Street into the existing quarry would have to contend with major rock excavations, potentially unsuitable soil conditions and adverse grades that would make the viability of any street extension highly questionable."
In opposition to plaintiffs' motion and in support of their own motions for summary judgment, defendants submitted several expert reports that disputed the conclusions of plaintiffs' experts concerning the suitability of the Garret Pointe site for high density residential development.
In granting defendants' motion for summary judgment, the trial court noted that West Paterson's zoning ordinance is entitled to a presumption of correctness, and it concluded that plaintiffs' expert reports had failed to overcome that presumption.
The court relied on the fact that the rezoning of the Garret Pointe site was "an integral element in [the] satisfaction of West Paterson's [constitutional] obligation to provide opportunities for affordable housing," and that plaintiffs had not intervened before COAH to oppose approval of West Paterson's compliance plan. The court also stated that plaintiffs' challenges to the rezoning of the Garret Pointe site were based "primarily [on] site plan issues, which can be addressed by the Planning Board," but "cannot form the basis for attacking a zoning ordinance."
On appeal, plaintiffs argue that their expert reports raised contested material issues of fact as to whether the rezoning of the Garret Pointe site for high density residential development conforms with the policies of the MLUL. Plaintiffs also argue that the trial court improperly considered as evidence its own observations derived from a site inspection, and that the trial court should have granted the Sartogas' motion for recusal. In their answering briefs, defendants argue that COAH's grant of substantive certification to West Paterson's Mount Laurel compliance plan included a factual finding that the Garret Pointe site is suitable for high density residential development, and that this finding is binding on the courts.
We conclude that COAH's grant of substantive certification to West Paterson's Mount Laurel compliance plan does not preclude plaintiffs' challenge to the validity of the ordinance rezoning the Garret Pointe site. We also conclude that plaintiffs raised contested issues of material fact as to the validity of the rezoning of the site for high density residential development. Accordingly, we reverse the summary judgment in favor of defendants and remand the case for trial. In view of this disposition, we have no need to consider plaintiffs' argument that the trial court *845 made improper use of its own observations in inspecting the site. However, the court should be guided at trial by the principles set forth in Morris County Land Improvement Co. v. Township of Parsippany-Troy Hills, 40 N.J. 539, 548-49, 193 A.2d 232 (1963) concerning any site inspection by a trier of fact. Plaintiffs' argument that the trial judge should have recused himself is clearly without merit, R. 2:11-3(e)(1)(E), and does not need to be revisited upon remand.

I
Initially, we consider defendants' argument that COAH's grant of substantive certification to West Paterson precludes the courts from considering plaintiffs' claim that the rezoning of the Garret Pointe site conflicts with the policies of the MLUL and is therefore arbitrary and capricious. Defendants argue that because COAH is required to consider whether a site designated for the construction of low and moderate income housing is "available, suitable, developable and approvable," N.J.A.C. 5:93-5.3(b), COAH's grant of substantive certification constituted an administrative finding that the Garret Pointe site is suitable for high density residential housing and that this finding is binding in a judicial challenge to the validity of the zoning ordinance adopted to implement the plan.
We find no authority in the Fair Housing Act (the Act), N.J.S.A. 52:27D-301 to -329, or the decisions interpreting the Act to support this argument. The Act clearly indicates that the sole effect of a grant of substantive certification to a municipality is to create a presumption of validity in an exclusionary zoning action challenging the validity of a zoning ordinance adopted to implement a certified plan. N.J.S.A. 52:27D-317a provides in pertinent part:
In any exclusionary zoning case filed against a municipality which has a substantive certification ... there shall be a presumption of validity attaching to the housing element and ordinances implementing the housing element. To rebut the presumption of validity, the complainant shall have the burden of proof to demonstrate by clear and convincing evidence that the housing element and ordinances implementing the housing element do not provide a realistic opportunity for the provision of the municipality's fair share of low and moderate income housing....
Consequently, under N.J.S.A. 52:27D-317a, the grant of substantive certification does not preclude a challenge to the validity of a zoning ordinance even on the ground that it fails to provide a realistic opportunity for the construction of a municipality's fair share of lower income housing. It follows a fortiori that substantive certification does not preclude a prerogative writ action challenging the validity of a zoning ordinance on other unrelated grounds.
This conclusion is supported by the Court's decision in Hills Dev. Co. v. Township of Bernards, 103 N.J. 1, 44-45, 510 A.2d 621 (1986), which rejected a challenge to the validity of the Fair Housing Act on the ground that it interferes with the Court's exclusive constitutional authority over actions in lieu of prerogative writs:

Certiorari has long been available in New Jersey to afford judicial review of administrative agency actions in general and of municipal ordinances in particular. Thus, all of the plaintiffs in the cases before us would appear to have a constitutional light, under Article VI, section V, paragraph 4, to judicial review of the municipalities' ordinances.
We do not find that the Act has interfered impermissibly with this right to *846 judicial review. Nothing in the Act precludes judicial review of an ordinance once [COAH] has acted on it.

[Citations omitted; emphasis added.]
Alexander's Dept. Stores of N.J., Inc. v. Borough of Paramus, 125 N.J. 100, 592 A.2d 1168 (1991) provides even more direct support for our conclusion that COAH's grant of substantive certification to West Paterson's compliance plan does not foreclose plaintiffs' challenge to the validity of the zoning ordinance adopted to implement that plan. In Alexander's, as in this case, parties adversely affected by a zoning ordinance adopted to implement a compliance plan granted substantive certification by COAH brought an action in lieu of prerogative writ challenging the ordinance. In rejecting defendant's argument that plaintiffs were barred from challenging the ordinance because they had failed to present their objections to COAH, the Court stated:
[W]e find significant that although the [Act] authorizes COAH to promulgate regulations regarding compliance with Mt. Laurel, it does not empower COAH to decide the underlying ordinances or the prerequisites to the ordinances' valid enactment. Although COAH has authority to determine whether a municipality's fair share plan truly provides a realistic opportunity for affordable housing, we agree with the Appellate Division that "[s]uch a determination does not ordinarily include a ruling whether a proposed ordinance and developer's agreement satisfy substantive and procedural legal standards generally applicable to such municipal actions whether or not they are taken in a Mt. Laurel setting."
....
[T]he [Act] delegates authority over municipal ordinances to COAH only for modification of zoning to comply with Mt. Laurel. COAH has no authority over ordinances generally or over determining the prerequisites for their valid enactment.

[Id. at 112-14, 592 A.2d 1168.]
See also East/West Venture v. Borough of Fort Lee, 286 N.J.Super. 311, 327-28, 669 A.2d 260 (App.Div.1996).
Moreover, even though COAH made an administrative finding that the Garret Pointe site was suitable for high density residential development, including housing affordable to lower income households, it did not conduct a hearing or make findings of fact based on an evidentiary record. In fact, as indicated by In re Petition for Substantive Certification, Township of Southampton, 338 N.J.Super. 103, 114-16, 768 A.2d 233 (App.Div.), certif. denied, 169 N.J. 610, 782 A.2d 428 (2001), COAH sometimes grants substantive certification to a compliance plan based on a perfunctory review of factual materials submitted by a municipality without COAH's own staff even inspecting the sites that the municipality has designated for Mount Laurel housing. Therefore, COAH's grant of substantive certification to West Paterson was not based on the kind of administrative fact-finding that is entitled to judicial deference. Accordingly, we reject defendants' argument that plaintiffs' challenge to the validity of the rezoning of its site is foreclosed by COAH's grant of substantive certification.

II
"A presumption of validity attaches to a zoning ordinance that may be overcome only if an opponent of the ordinance establishes the ordinance is `clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute.'" Manalapan Realty, L.P. v. Township Comm. of *847 Township of Manalapan, 140 N.J. 366, 380, 658 A.2d 1230 (1995) (quoting Bow & Arrow Manor, Inc. v. Town of West Orange, 63 N.J. 335, 343, 307 A.2d 563 (1973)). In determining whether a zoning ordinance is arbitrary, capricious or unreasonable or contrary to the MLUL, a court must consider not only whether it advances the purposes of the MLUL but also whether it is reasonably related to those purposes and whether it conflicts with other purposes of the MLUL. See Pheasant Bridge Corp. v. Township of Warren, 169 N.J. 282, 290-91, 777 A.2d 334 (2001); Home Builders League of S. Jersey, Inc. v. Township of Berlin, 81 N.J. 127, 137-42, 405 A.2d 381 (1979). Therefore, if a party challenging the validity of a zoning ordinance presents evidence that could support a finding that the ordinance violates the principles of sound zoning embodied in the MLUL, an evidentiary hearing must be held to afford both the party challenging the ordinance and the municipality an opportunity to present expert testimony relevant to a determination of its validity. See Bow & Arrow Manor, Inc. v. Town of West Orange, supra, 63 N.J. at 347-49, 307 A.2d 563.
Plaintiffs' expert reports contain various allegations that could support a finding that the rezoning of the Garret Pointe site for high density residential development conflicts with the purposes of the MLUL. Those reports express the opinion that high density residential development of this site would be incompatible with existing single family housing in the immediately adjoining areas of West Paterson and Clifton. The reports also contend that the steep slopes, cliffs and wetlands on the site make it unsuitable for high density residential development. In addition, the reports claim that the dangerous intersection of Mountain Park Road and Paxton Street and sole access to the site by means of Paxton Street would not afford safe vehicular or pedestrian access to such a development. If accepted by the trier of fact, these opinions could support findings that the rezoning of the Garret Pointe site conflicts with various purposes of the MLUL, including the "establishment of appropriate population densities and concentrations that will contribute to the well-being of persons, neighborhoods, communities and regions and preservation of the environment[,]" N.J.S.A. 40:55D-2(e), "ensur[ing] that the development of individual municipalities does not conflict with the development and general welfare of neighboring municipalities," N.J.S.A. 40:55D-2(d), "the ... development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare," N.J.S.A. 40:55D-2(a), and "secur[ing] safety from fire, flood, panic and other natural and man-made disasters." N.J.S.A. 40:55D-2(b).
Garret Pointe argues that the validity of a zoning ordinance must be sustained if it furthers any purpose of the MLUL, even if it conflicts with other purposes of the law, and that satisfaction of the constitutional obligation to zone for affordable housing is one purpose of the MLUL. In support of this argument, Garret Pointe relies upon a statement in Riggs v. Township of Long Beach, 109 N.J. 601, 611, 538 A.2d 808 (1988) that "a zoning ordinance must satisfy certain objective criteria," one of which is that it "must advance one of the purposes of the [MLUL] as set forth in N.J.S.A. 40:55D-2." However, the Court in Riggs only indicated that a zoning ordinance that fails to satisfy any of the purposes of the MLUL will be invalidated. Id. at 612-13, 538 A.2d 808. The Court did not say that an ordinance that satisfies one purpose of the MLUL will be automatically upheld *848 even if it conflicts with other purposes of the MLUL. To the contrary, the Court has recognized that "[a]lmost inevitably restrictions on the use of land will have both salutary and detrimental effects." Home Builders League of S. Jersey, Inc. v. Township of Berlin, supra, 81 N.J. at 139, 405 A.2d 381. Hence, "[a] provision which has some beneficial effect will not automatically be deemed valid and consonant with the general welfare." Ibid. "Rather, the court is required to decide whether a proper legislative goal is being achieved in a manner reasonably related to that goal." Ibid. Consistent with these principles, the Court has indicated that municipal compliance with the constitutional obligation to provide lower income housing "does not require bad planning." Southern Burlington County NAACP v. Township of Mount Laurel, supra, 92 N.J. at 238, 456 A.2d 390. Therefore, a zoning ordinance that furthers the constitutional and statutory goal of providing housing for lower income families is not insulated from challenge on the ground that it conflicts with other purposes of the MLUL.
Garret Pointe also argues that plaintiffs' allegations concerning the incompatibility between high density residential development of its site and adjoining uses, the presence of cliffs and other environmental constraints, and lack of adequate and safe access to the site, constitute "site plan issues" which "should be raised in a Planning Board site plan review hearing, rather than in a challenge to the Ordinance." However, a planning board's authority in reviewing a site plan application is limited to determining whether the plan conforms with the municipality's zoning and site plan ordinances. W.L. Goodfellows & Co. of Turnersville, Inc. v. Washington Township Planning Bd., 345 N.J.Super. 109, 116, 783 A.2d 750 (App. Div.2001); Shim v. Washington Township Planning Bd., 298 N.J.Super. 395, 411, 689 A.2d 804 (App.Div.1997). "[Site plan review] was never intended to include the legislative or quasi-judicial power to prohibit a permitted use.'" PRB Enters., Inc. v. South Brunswick Planning Bd., 105 N.J. 1, 7, 518 A.2d 1099 (1987) (quoting Lionel's Appliance Ctr., Inc. v. Citta, 156 N.J.Super. 257, 264, 383 A.2d 773 (Law Div.1978)).
Similarly, in the closely related context of review of a subdivision application, the Supreme Court has indicated that a planning board's authority is circumscribed by the municipality's zoning and other land use ordinances:
The Appellate Division in this case concluded that under the MLUL a planning board does not have the broad authority to consider a subdivision application in light of the general welfare or of the purposes of zoning under the MLUL or general principles of sound planning apart from the standards of applicable local subdivision and zoning ordinances. It found that if a proposed subdivision complies with local ordinances and the MLUL, then a planning board "`shall... grant preliminary approval.'" [Pizzo Mantin Group v. Township of Randolph, 261 N.J.Super. 659, 666, 619 A.2d 676 (App.Div.1993)] (quoting N.J.S.A. 40:55D-48) (emphasis omitted).... According to the Appellate Division, N.J.S.A. 40:55D-2, which sets forth the general purposes of the MLUL, "was not a codification of standards for the purpose of guiding planning boards in the review of particular subdivision applications. Rather, it provides a framework, together with N.J.S.A. 40:55D-48, from which general guidelines and particular standards should be devised by the governing body." Id. at 667, 619 A.2d 676.
....
*849 We concur generally in the Appellate Division's analysis and interpretation of the MLUL. The MLUL evinces a legislative design to require consistency, uniformity, and predictability in the subdivision-approval process. The legislative scheme contemplates that a planning board's review of a subdivision proposal, including the layout of the entire design, must be made within the framework of the standards prescribed by the subdivision and, if pertinent, the zoning ordinances.

[Pizzo Mantin Group v. Township of Randolph, 137 N.J. 216, 228-29, 645 A.2d 89 (1994).]
In short, a planning board's authority in reviewing an application for site plan or subdivision approval is limited to determining whether a development plan conforms with the zoning ordinance and the applicable provisions of the site plan or subdivision ordinance. A planning board has no authority to deny site plan approval based on its view that a use permitted under the zoning ordinance, such as, in this case, high density residential development, is inconsistent with principles of sound zoning.
We have no doubt that some of the problems plaintiffs' experts claim would be created by high density development of the Garret Pointe site, such as the dangers posed by the quarry cliffs, the site's ecological sensitivity, and the lack of adequate and safe vehicular and pedestrian access, could be considered in reviewing an application for site plan approval. See N.J.S.A. 40:55D-38(b)(2), 40:55D-41(b). However, considered in their entirety, the criticisms presented by plaintiffs' experts concerning the rezoning of the Garret Pointe site are not simply "site plan issues," but instead could provide a basis for finding that the rezoning of the site for high density residential development violates the principles of sound zoning embodied in the MLUL and is therefore invalid.
Accordingly, we reverse the summary judgment in favor of defendants and remand the case for trial.
NOTES
[1] See Southern Burlington County NAACP v. Township of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983).