795 A.2d 290

RUMSON ESTATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MAYOR & COUNCIL OF THE BOROUGH OF FAIR HAVEN AND FAIR HAVEN PLANNING BOARD, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 20, 2002—Decided April 22, 2002.

Before Judges WALLACE, JR., CARCHMAN and WELLS.

*Theodore D. Parsons, Jr.* argued the cause for appellant (*Parsons & Nardelli*, attorneys; *Mr. Parsons, Jr.*, on the brief).

*Bernard M. Reilly* argued the cause for respondents (*Dowd & Reilly*, attorneys; *Mr. Reilly*, on the brief).

The opinion of the court was delivered by

CARCHMAN, J.A.D.

Plaintiff Rumson Estates, Inc. appeals from a judgment of the Law Division dismissing its complaint in lieu of prerogative writs and upholding the validity of defendant Borough of Fair Haven's zoning ordinance providing for maximum habitable floor area. We agree and conclude that the ordinance represents an appropriate exercise of municipal authority under *N.J.S.A.* 40:55D-65. Accordingly, we affirm.

The facts are not in significant dispute. Plaintiff was the owner of undeveloped property containing approximately 27,000 square feet. It proposed to subdivide the property into three lots located in the Borough, to be identified as Lots 75, 76, and 77 in Block 77 on William Street. Each of these proposed lots would have identical dimensions of 50 foot frontage by a depth of 181.5 feet for a total area of 9,066.4 square feet per lot.

The Borough is a small municipality approximately one square mile in area and inhabited by approximately 5,700 residents. It is primarily residential and almost entirely developed. Recent development in the Borough has consisted mainly of single lot construction or small subdivisions similar to plaintiff's proposed subdivision.

In 1999, as part of a comprehensive revision of its development regulations, the Borough revised the zoning of Block 77 on Wil-

liam Street from R–7.5 (requiring 60 feet frontage and a minimum lot area of 7,500 square feet) to R–5 (requiring 50 feet frontage and a minimum lot area of 5,000 square feet). The R–5 zone also specified a maximum habitable floor area ratio of 0.40. The Borough's zoning ordinances, in addition to floor area ratios, provides for maximum habitable floor areas. The maximum habitable floor area in the R–5 zone is 2,200 square feet. While each of plaintiff's proposed lots were conforming as to minimum area size, the proposed residences of approximately 2,500 square feet exceeded the maximum habitable floor area. Absent the maximum floor area limitation, a residence of approximately 3,600 square feet could be erected within the limitations of maximum floor area ratio.

Plaintiff applied for a subdivision and variances before the Fair Haven Planning Board so that it could build homes that exceeded the maximum habitable floor area on all three of its lots. The planning board denied plaintiff's application. Plaintiff then filed an action in the Law Division challenging the validity of the ordinance, the denial of the subdivision and the denial of the variance from the maximum floor area zoning requirements. During the pendency of the Law Division action, the planning board granted the subdivision. Judge Lawson dismissed the challenge to the ordinance and further concluded that plaintiff could still proceed before the zoning board for a variance pursuant to *N.J.S.A.* 40:55D–70(d). This appeal followed.

In challenging the validity of the ordinance, plaintiff asserts that the Borough exceeded its authority under *N.J.S.A.* 40:55D–65 in enacting "a maximum floor area ordinance with no link to the size of the lot." Plaintiff focuses on other provisions of the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55–D–1 to –129, specifically defining how floor area ratio is to be calculated. *See N.J.S.A.* 40:55D–4. Our reading of the operative enabling section leads us to a different conclusion.

*N.J.S.A.* 40:55D–65 states in pertinent part:

A zoning ordinance may:

. . . .

b. Regulate the bulk, height, number of stories, orientation, and size of buildings and the other structures; the percentage of lot or development area that may be occupied by structures; lot sizes and dimensions; *and for these purposes may specify floor area ratios and other ratios and regulatory techniques governing the intensity of land use and the provision of adequate light and air,* including, but not limited to the potential for utilization of renewable energy sources.

[emphasis added.]

The Borough urges that the statute permits the use of such maximum floor area restrictions as a means of appropriately diversifying housing stock and to permit maximum square foot limitations to be based solely on floor area ratios would "be relinquishing the determination and control as to the diversity of its housing stock to developers." The Borough also claims that the purpose of the floor area limitation is to ensure that appropriately sized residences are built on the lots in this particular zone so as to allow for reasonably priced homes in the Borough. In challenging the validity of the Borough's ordinance, plaintiff claims that the ordinance is arbitrary and capricious. Plaintiff, relying on *Home Builders League of S. Jersey, Inc. v. Township of Berlin,* 81 *N.J.* 127, 405 *A.2d* 381 (1979), asserts that the Borough is not achieving this legislative goal in a manner reasonably related to that goal.

In *Home Builders,* the Supreme Court concluded that a *minimum* habitable floor area ordinance was "unrelated to legitimate zoning purposes." *Id.* at 148, 405 *A.2d* 381. In addressing that question, the Court observed: "[a]t issue in this case is the validity of provisions in a municipal zoning ordinance which impose minimum floor area requirements for residential dwellings irrespective of the number of occupants living in the home and *unrelated to any other factor, such as frontage or lot size."* *Id.* at 130, 405 *A.2d* 381 (emphasis added).

Central to the Court's analysis was the recognition that the ordinance's true purpose was to exclude low and moderate income families from the municipality:

Zoning which excludes low and moderate income families for fiscal purposes has been condemned as contrary to the general welfare. [*Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel*, 67 N.J. 151, 336 A.2d 713, *appeal dismissed and cert. denied*, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (*Mount Laurel I*)]; *Oakwood at Madison, Inc. v. Tp. of Madison*, 72 N.J. 481, 371 A.2d 1192 (1977). As we have stated previously stated, once it is demonstrated that the ordinance excludes people on an economic basis without on its face relating the minimum floor area to one or more appropriate variables, the burden of proof shifts to the municipality to show a proper purpose is being served... It is a burden which [defendant] has failed to meet.

[*Id.* at 147–48, 405 A.2d 381.]

The ordinance under review in *Home Builders* implicated a conflict with the constitutional doctrine requiring that municipalities "provide a realistic opportunity for the construction of its fair share of low and moderate income housing...." *Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel*, 92 N.J. 158, 217, 456 A.2d 390 (1983) (*Mount Laurel II*). The Court determined that the use of minimum floor area requirements was designed to compromise the constitutional mandate.

The impact of the Borough's ordinance under review here serves the stated purpose of ensuring that within this zone of relatively small lot sizes, residences will be built that are proportionate to the size of other homes in the zone. Additionally, such restriction will serve the salutary goal of providing appropriately priced housing in a small municipality limited in area and available housing stock. Plaintiff's assertion that no consideration is given to lot size is misplaced. To allow a 3,600 square foot residence on a 9,000 square foot lot in a zone requiring a minimum of 5,000 square feet of area does indeed leave the zoning decision to the developer. Plaintiff's pre-subdivision lot was approximately 27,000 square feet. Consistent with plaintiff's argument, it could build a residence approximating 11,000 square feet. Whether such a house in this zone would be economically feasible is not the issue; such potential development, however beneficial, absent the 2,200 square foot requirement, is in direct contravention to a carefully conceived zone plan designed to achieve a legitimate purpose.

We are satisfied that our decisions in *Manalapan Builders Alliance, Inc. v. Township Comm. of the Township of Manalapan*,

256 *N.J.Super.* 295, 606 *A.*2d 1132 (App.Div.1992), and *Sartoga v. Borough of W. Paterson,* 346 *N.J.Super.* 569, 580–81, 788 *A.*2d 841 (App.Div.2002), do not mandate a different result. In *Manalapan,* we held that a municipality may not exclude wetlands in determining net buildable area in calculating a floor area ratio. As one commentator has observed about *Manalapan,* the decision

is important because it has become the practice in a large number of municipalities to adopt what are generally called "constraint" ordinances effectively requiring a lot size for particular developments over and above that required for the zone generally. In Manalapan the ordinances totally excluded wetlands, steep slopes and other area designated "critical." More sophisticated ordinances set forth certain ratios or percentages to control on an individual basis the lot size required for developments depending on the type of "critical area" involved. This type of regulation also exceeds the authority given by the MLUL. The statute requires uniformity of regulation within each district.

[William M. Cox, *New Jersey Zoning and Land Use Administration* § 35–2, at 724 (Gann 2002).]

Here, there is no problem with uniformity of regulation within each district. The Borough's maximum habitable floor area ordinance leads to uniformity throughout the R–5 district. It does not give Borough the type of individual control over a lot that Cox suggests is beyond the power of municipalities as contrary to a fundamental purpose of zoning.

In *Manalapan,* we considered the ordinance in the context of the definitional limitations contained in *N.J.S.A.* 40:55D–4, which defined "floor area ratio" as well as "density." In holding that the ordinance was *ultra vires,* we concluded that the ordinance changed the statutory definitions and the municipality could not justify its action by relying on the broad enabling provisions of *N.J.S.A.* 40:55D–65. We are not burdened with such constraints here. There are no definitions which restrict the municipality from exercising its authority under section 65 to restrict maximum floor area when considered in the context of a zone plan establishing small lots and proportionate residences.

In *Sartoga,* we held that a challenge to a rezoning of property raised genuine issues of material fact warranting a hearing and cautioned that the salutary effect of satisfying a *Mount Laurel* requirement does not insulate an ordinance "from challenge on the

grounds that it conflicts with other purposes of the MLUL." 346 *N.J.Super.* at 581, 788 *A.*2d 841; *see also Riggs v. Township of Long Beach,* 109 *N.J.* 601, 612–13, 538 *A.*2d 808 (1988). Here we sanction a zone plan that is directly related to relative lot sizes and designed to insure uniformity in housing. This is a municipality constrained by limited land availability seeking to diversify its housing stock in a well-conceived land-use plan.

In assessing the validity of a municipal land use ordinance, we are mindful of the process of review enunciated in *Riggs.*

> A zoning ordinance is insulated from attack by a presumption of validity, which may be overcome by a showing that the ordinance is "clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute." The party attacking the ordinance bears the burden of overcoming the presumption, and, in meeting the burden, that party may rely on extrinsic evidence. Courts should not question the wisdom of an ordinance, and if the question is debatable, it should be upheld.
>
> Although the judicial role is circumscribed, a court may declare an ordinance invalid if in enacting the ordinance the municipality has not complied with the requirements of the statute. Generally, a zoning ordinance must satisfy certain objective criteria. First, the ordinance must advance one of the purposes of the Municipal Land Use Law as set forth in *N.J.S.A.* 40:55D–2. Second, the ordinance must be "substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements," *N.J.S.A.* 40:55D–62, unless the requirements of that statute are otherwise satisfied. Third, the ordinance must comport with constitutional constraints on the zoning power, including those pertaining to due process, equal protection, and the prohibition against confiscation. Fourth, the ordinance must be adopted in accordance with statutory and municipal procedural requirements.
>
> [*Riggs, supra,* 109 *N.J.* at 610–612, 538 *A.*2d 808 (citations omitted).]

Applying these principles to the Borough's ordinance, we observe that the language of the *N.J.S.A.* 40:55D–65 enables a broad grant of authority to municipalities to regulate the intensity of land use; i.e., the size of structures on property. The statute affords a municipality several specific options to achieve that end, including regulations for the bulk, height and orientation. Furthermore, the statute empowers a municipality to enact floor area ratios, and provides the municipality definitions on how the floor are ratios are to be used. *See Manalapan, supra,* 256 *N.J.Super.* at 304–06, 606 *A.*2d 1132. However, the statute does not limit a municipali-

ty's power to enact ordinances to the specific examples listed. Rather, the Legislature has empowered municipalities to create "other ratios and regulatory techniques governing the intensity of land use and the provision of adequate light and air." *N.J.S.A.* 40:55D–65(b). The limitation on maximum habitable floor area falls within the scope of the general enabling provisions of the statute. We conclude that there is no statutory infirmity to the ordinance.

We reject, without the necessity of further comment, plaintiff's assumption that the ordinance is unconstitutional. We, likewise, reject plaintiff's assertion that the judge erred in permitting plaintiff to proceed before the zoning board for appropriate relief. *R.* 2:11–3(e)(1)(E).

Affirmed.

WELLS, J.A.D., dissenting.

While I have no quarrel with the objective of Fair Haven's zoning ordinance "to preserve a diversity of housing stock" within the municipality, I conclude that it has chosen a means to do so that is in flat violation of the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –129. While purporting to establish a table of "floor area ratios" as permitted by the MLUL, *N.J.S.A.* 40:55D–4, the ordinance rigidly caps the size of buildings at 2,200 square feet regardless of the size of the lot. Indeed, in this case, the owner of lots 9,066 square feet in size could not persuade the Planning Board to accord them a modest increase in house size to 2,590 square feet.

Thus, at Fair Haven's prescribed floor area ratio of .4, if an owner has a 5,000 square foot lot (the minimum lot size permitted in the zone), the owner may erect a 2,000 square foot house. If the owner has a 5,500 square foot lot, he or she may erect a 2,200 square foot house. But if an owner has a lot of 7,500 square feet, the house is also limited to 2,200 square feet, notwithstanding that, but for the capping provision, the owner might have built a house of 3,000 square feet.

Thus, for all practical purposes, in the latter example Fair Haven has arbitrarily taken 2,000 square feet from the total area of the lot for purposes of calculating the size of a permitted house. In so doing, in my opinion, it has run afoul of the statutory definition of floor area ratio. That definition is: "[T]he sum of the area of all floors of buildings or structures compared to the total area of the site." *N.J.S.A.* 40:55D-4.

We have expressly held in a somewhat different context that such manipulation of the definition of floor area ratio is impermissible and *ultra vires*. In *Manalapan Builders Alliance, Inc. v. Township Committee of the Township of Manalapan*, 256 *N.J.Super.* 295, 606 *A.*2d 1132 (App.Div.1992), the municipality adopted a floor area ratio scheme which, for quite legitimate environmental reasons, required developers to subtract from the total square footage of their lots environmentally sensitive areas to calculate the permitted size of the house. We said:

> The MLUL is explicit in its definitions. *N.J.S.A.* 40:55D-4 defines "density" as "the permitted number of dwelling units per gross area of land to be developed." Density restrictions affect only the number of individual residential units that may be construed on a tract of land. *Commercial Realty and Resources Corp. v. First Atlantic Properties Co.*, 122 *N.J.* 546, 561, 585 *A.*2d 928 (1991). *N.J.S.A.* 40:55D-4 defines "floor area ratio" as "the sum of the area of all floors of buildings or structures compared to the total area of the site." Floor-area restrictions affect the aggregate size, i.e., height, width and depth, of structures in relation to the area of the land on which they are to be built. *Commercial Realty, supra,* 122 *N.J.* at 561, 585, *A.*2d 928. *N.J.S.A.* 40:55D-4 also defines "lot" as "a designated parcel, tract or area of land established by a plat or otherwise, as permitted by law and to be used, developed or built upon as a unit." And, *N.J.S.A.* 40:55D 6 defines "residential density" as "the number of dwelling units per gross acre of residential land area including streets, easements and open space portions of a development."

> The Omnibus Ordinance involved in this case, however, allows the calculation of lot and floor areas only after they are reduced by certain land features specified in the Ordinance. Consequently, as plaintiffs correctly note, the statutory definition of "floor area ratio" is changed to net area of the site and "lot" is changed to a net unit. When the Ordinance is applied to a particular parcel, the definitions of "density" and "residential density" are changed from gross area to net area. In our view, the trial judge was correct in finding Section I void as *ultra vires* and beyond the local legislative power.

> [*Manalapan, supra,* 256 *N.J.Super.* at 305, 606 *A.*2d 1132.]

Furthermore, Manalapan, as Fair Haven here (as well as the majority opinion), sought refuge in *N.J.S.A.* 40:55D–65 to draw an exception to the statutory definitions to serve a salutary zoning objective. But we stated:

[Manalapan] contends that, pursuant to *N.J.S.A.* 40:55D–65b, it was entitled to adopt and enact other formulas to accomplish the purposes and goals set forth in its ordinances, and that Section I falls within the definition of these other formulas and ratios since it was adopted to control development on environmentally sensitive lands. The Township claims that there is no individual flexibility to zone if it must narrowly follow the definitions as set out in the MLUL. We disagree.

*N.J.S.A.* 40:55D–65b permits a zoning ordinance to:

Regulate the bulk, height, number of stories, orientation, and size of buildings and other structures; the percentage of lot or development area that may be occupied by structures; lot sizes and dimensions; and for these purposes may specify floor area ratios and other ratios and regulatory techniques governing the intensity of land use and the provision of adequate light and air, including, but not limited to the potential for utilization of renewable energy sources.

Nowhere, however, does the MLUL allow municipalities to change the definitions of terms in the statute in order to control development or promote environmental protection. *N.J.S.A.* 40:55D–3 declares that the prescribed definitions are to be used for purposes of the MLUL, "unless the context [used in the Act] clearly indicates a different meaning." Moreover, *N.J.S.A.* 40:55D–2d declares that one of the purposes of the MLUL is "[ t]o ensure that the development of individual municipalities does not conflict with the development and general welfare of neighboring municipalities, the county and the state as a whole."

[*Id.* at 306, 606 A.2d 1132.]

Of like opinion is *Crow–New Jersey 32 Ltd. Partnership v. Township of Clinton,* 718 *F.Supp.* 378 (D.N.J.1989). If redefining floor area ratio for good environmental reasons is impermissible, so too, in my opinion, is redefining it to preserve a diversity of housing stock, as worthy a goal as that might be. Surely, wisdom can devise means to accomplish that end which do not do violence to a basic definition provided in the MLUL.

I am, therefore, constrained to dissent. I would rule that the ordinance at issue is *ultra vires* and declare so much of it which purports to cap the size of structures on a given size lot as void and unenforceable.